NOTICE
Decision filed 04/15/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or he disposition of the same.

2020 IL App (5th) 170310-U

NOS. 5-17-0310, 5-17-0311, 5-17-0312, 5-17-0313 cons.

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Marion County. |
| | ) | |
| v. | ) | Nos. 11-CF-340, 13-CF-92, |
| | ) | 15-CF-172, 15-CF-232 |
| ANDRE ROBINSON, | ) | |
| | ) | Honorable J. Marc Kelly, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justice Cates and Barberis concurred in the judgment.

**ORDER**

¶ 1     *Held:* Circuit court did not err in sentencing the defendant to more than the minimum sentence of imprisonment where the court properly considered the relevant sentencing factors, there was no improper consideration of the defendant's probation violations in sentencing, and the sentences were well within the sentence range for the offenses.

¶ 2     The defendant, Andre Robinson, appeals from a final judgment rendered on August 8, 2017, in which the circuit court of Marion County affirmed its decision to revoke the defendant's probation and sentence him to three years in the Illinois Department of Corrections (DOC) in cases 11-CF-340, 13-CF-92, and 15-CF-172, all sentences to run concurrently with each other; and rendered a consecutive sentence of

1

seven years of imprisonment in case 15-CF-232. The defendant argues that the circuit court improperly considered his conduct while on probation instead of focusing solely on his underlying offenses, and thus, abused its discretion when it sentenced him to more than the minimum sentence required. After review of the record, we find that the circuit court did not abuse its discretion and properly considered the sentencing factors prior to rendering its judgment. Accordingly, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On February 10, 2011, the defendant was arrested for driving under the influence of alcohol. He was subsequently charged and pleaded guilty to driving under the influence (DUI), a Class A misdemeanor, in case number 11-DT-23. As a result, on June 9, 2011, he received court supervision for a period of two years, a fine, and his driver's license was suspended. In addition, the circuit court ordered the defendant to undergo a drug and alcohol evaluation, and complete any treatment recommended by the evaluation. He was further ordered to abstain from illegal drugs and alcohol and was to be subject to random drug and alcohol testing.

¶ 5     On September 16, 2011, while still on court supervision for his February 2011 DUI offense, the defendant was arrested for the offense of driving while his license was suspended when law enforcement discovered him operating a vehicle in Centralia, Illinois. He was later charged with driving on a suspended license, a Class 4 felony, in case number 11-CF-340. For a Class 4 felony offense, the defendant could have been sentenced from one to three years' imprisonment and/or given a fine of up to $25,000.

¶ 6    On March 1, 2012, while the charges in 11-CF-340 were pending, the defendant tested positive for the presence of cocaine during one of his required random drug tests. The defendant initially attempted to blame the positive test on prescription medication he was taking; however, he eventually admitted to ingesting the drug a few days prior.

¶ 7    On May 31, 2012, during a hearing before the circuit court, a negotiated plea was presented. The plea required the defendant to plead guilty in case 11-CF-340. In return, the defendant would receive 30 months' probation, serve 30 days in the Marion County jail on weekends, and pay fines and costs. The defendant would also complete a drug and alcohol evaluation along with any treatment and abstain from illegal drugs, alcohol, and nonprescribed medication. Additionally, in case 11-DT-23, the defendant would admit to a pending petition to revoke probation and would be discharged unsuccessfully from his court supervision in that matter. As a result of this admission, he would then be ordered to pay all fines and costs, and would serve 30 days in the Marion County jail concurrently with that portion of his sentence in 11-CF-340.

¶ 8    Following the presentation of the plea deal, the circuit court inquired into the defendant's criminal history and admonished the defendant of his rights. The defendant then pleaded guilty to driving with a suspended license. Following his plea of guilty, and in accordance with the negotiated deal with the State, the circuit court revoked the defendant's driver's license as a result of the defendant violating his court supervision, and rendered the remaining agreed-to sentences, costs, and probation conditions.

¶ 9    On March 9, 2013, while his license was still revoked due to his previous offenses, a traffic stop was made on a speeding vehicle that the defendant was operating. The

3

defendant was arrested for driving on a revoked driver's license. During the police officer's processing of the vehicle following the defendant's arrest, the officer discovered a small amount of marijuana and a few prescription pain pills in a box near the vehicle's driver's seat. Later, it was determined that the defendant did have a valid prescription for the pain medication and the charge of possession of a controlled substance was dropped. However, the charge of driving on a revoked license remained and case 13-CF-92 alleging a Class 4 felony of driving on a revoked license was brought against the defendant. The defendant entered a plea of guilty and received probation and another 30 days in jail to be served on weekends.

¶ 10    Following several continuances, on March 27, 2014, a pretrial hearing was held for the defendant's pending court cases. At that hearing, the defendant entered a plea of guilty in case 13-CF-92 for driving on a revoked license and admitted to the petition to revoke probation in case 11-CF-340 for driving on a revoked license. His other traffic offenses were dismissed by agreement with the State. Prior to admitting to the petition to revoke in 11-CF-340, the circuit court admonished the defendant that by admitting to the petition he could be resentenced on the original charge of driving on a suspended license. The sentencing date was subsequently set for May 15, 2014.

¶ 11    During the May 15, 2014, sentencing hearing, it was revealed that the defendant had a substantial criminal history. The defendant had served 15 years' imprisonment for a 1999 residential burglary offense. He had also served a concurrent three-year sentence due to his possession of "burglary tools." After being released in 2006, the defendant was arrested for DUI in February 2011 and received court supervision because he had no prior

4

driving history at that time. The court found the following in its sentencing of the defendant:

"In aggravation, I find that [the defendant] does have a substantial criminal history. I also find that he committed 13-CF-92 while he was on probation on 11-CF-340. And they're both for driving on suspended license ***. So I find those matters in aggravation. In mitigation, I do find that no serious harm occurred as a result of the offenses. I find that he didn't contemplate any serious harm, because he didn't—all he was going to do was drive to work. He thought he could get there and get back without getting in trouble.

And he was driving to get to work. He does work to support his family. I find that his imprisonment would create hardships on his dependents. He does have a medical condition. Even though I don't think that medical condition would be endangered by incarceration, it is a factor to be considered. *** And I do find that [the defendant] has made substantial strides towards changing his lifestyle. He's been basically out of trouble, except for driving. And he has had some abuse of alcohol and other drugs in the past few years. But other than that, he's stayed out of trouble."

¶ 12    The defendant was then sentenced to two years' probation with 30 days in the Marion County jail on work release. The defendant was also ordered to undergo a drug and alcohol evaluation again and complete any recommended treatment. The defendant

was again ordered to abstain from the use of illegal drugs and alcohol and would remain subject to random drug testing.

¶ 13    On June 19, 2015, the defendant appeared in court on case number 15-CF-172. The allegations against the defendant were that he had accosted two 15-year-old females while they were walking home in Centralia, Illinois. The girls alleged that the defendant initially approached them and grabbed one of them by the arm while demanding her name. She refused. The other female recognized the defendant as the stepfather of an acquaintance. The girls alleged that the defendant then asked if they wanted a job or had a job. When one of the girls indicated that she babysat for children on occasion, the defendant replied that the female "looked like a big baby that needs some loving." At this time, the defendant then attempted to grab the other female to stop the two from continuing their walk home. The defendant also continued making comments towards the girls, such as "you look just right for me." It was further alleged that the defendant was intoxicated during the encounter.

¶ 14    As a result of the allegations, the State informed the circuit court during the hearing that it was filing petitions to revoke probation in both 13-CF-92 and 11-CF-340. The circuit court was then advised of the defendant's criminal history, as previously discussed in this recitation of facts, and was further informed of additional offenses committed by the defendant, including felony criminal damage to property in 1998 and felony burglary in 1991, 1988, 1986, 1984, and 1982.

¶ 15    As a result of the allegations, the State charged the defendant with three separate counts, consisting of two counts of aggravated battery and one count of disorderly

conduct. The court informed the defendant that the aggravated battery charges could result in possible sentences of two to five years' imprisonment followed by a year of mandatory supervised release and/or a fine of up to $25,000.

¶ 16    On July 14, 2015, at the preliminary hearing for 15-CF-172, the responding police officer testified and confirmed the allegations made by the young females. He also testified that he had spoken to the defendant following the incident and found he had been drinking alcohol and had been in a physical altercation. Following the presentation of evidence, the circuit court found probable cause and set a pretrial for August 24, 2015.

¶ 17    Prior to that hearing, on August 14, 2015, the defendant was brought to court for additional new charges in case number 15-CF-232 stemming from an alleged burglary that occurred on August 13, 2015. It was alleged that the defendant knowingly and without authority entered a building in Centralia, Illinois, with the intent to commit theft. While the burglary was a Class 2 felony offense, because the defendant had six prior convictions of burglary, including a conviction for residential burglary, he was subject to Class X felony sentencing, which meant he could be sentenced from 6 to 30 years' imprisonment with a fine of up to $25,000. Following the circuit court's reading of the charges, the defendant's bond was issued, and a preliminary hearing was set. The court also rescheduled the defendant's other case settings for the same day.

¶ 18    On January 7, 2016, the State and the defendant reached a negotiated plea deal regarding his pending charges. The deal was that upon the defendant's plea of guilty in his burglary charge, 15-CF-232, the circuit court would sentence him to 30 months' probation with the central condition of that probation being that the defendant participate

7

in, and successfully complete, the Marion County Drug Court program. The defendant was also required to pay $200 in restitution for the stolen property. Further, in the defendant's aggravated battery and disorderly conduct case, 15-CF-172, the defendant agreed to enter an *Alford* plea (see *North Carolina v. Alford*, 400 U.S. 25 (1970)), to which the State agreed not to object, and again the defendant would receive 30 months' probation with the main condition being the participation in and successful completion of the Marion County Drug Court program. Finally, in the defendant's felony traffic cases, 13-CF-92 and 11-CF-340, the defendant agreed to admit the allegations contained in both respective pending petitions to revoke probation. Then following the revocation of his probation, he would be resentenced to 30 months' probation with the additional requirement of participation in and completion of the Marion County Drug Court program. The circuit court then discussed each of the defendant's charges with him and admonished him regarding the effects of his acceptance of the negotiated plea deal. After confirming the defendant's desire to agree to the plea, the circuit court accepted the defendant's plea and sentenced the defendant accordingly.

¶ 19 Following the defendant's entry into the Marion County Drug Court program, he maintained compliance until he tested positive for the use of alcohol and cocaine on May 2, 2016. On May 6, 2016, he was brought before the circuit court with the allegations of noncompliance and the defendant admitted to using the drugs. Following this development, the defendant continued to have regular hearings before the drug court and was also placed on electronic monitoring and restricted to home confinement. Following his noncompliance in May 2016, the defendant failed to submit to required drug testing

on June 24 and June 27 of that same year. He then again tested positive for cocaine on June 29, 2016. On August 30, 2016, the defendant tested positive for the use of a prescription medication, Tramadol, for which he did not have a prescription.

¶ 20    On September 6, 2016, the defendant appeared before the circuit court, which informed him that petitions to revoke his probation had been filed due to his noncompliance with the drug program and he could be resentenced on his original charges. Then during a hearing on September 16, 2016, the defendant made a formal request for inpatient rehabilitation treatment for his addiction. The circuit court granted this request over the objection of the State. The petitions to revoke probation remained pending.

¶ 21    The defendant then participated in and completed his inpatient rehabilitation treatment. He was discharged on October 14, 2016. The circuit court set a hearing date for the pending petitions to revoke probation on October 25, 2016. On October 21, 2016, the defendant was brought back into court because the State had learned that the defendant had been spotted driving an automobile in September 2016 while his license was still revoked. The defendant admitted to the allegations. The State at this time also brought to the circuit court's attention reports of the defendant arguing with his probation officers and attorneys.

¶ 22    Following the defendant's release from inpatient rehabilitation treatment, he restarted his program in the Marion County Drug Court. On November 4, 2016, the Marion County Drug Court was having a graduation ceremony for some of the participants who had completed the program. The defendant was invited and appeared at

9

that graduation ceremony under the influence of alcohol. He was tested and was found to have a blood alcohol content of .114. On November 7, 2016, the State filed an amended petition to revoke probation in all of the defendant's pending cases.

¶ 23 On December 13, 2016, the defendant appeared before the circuit court on the amended petitions to revoke. The defendant, after being admonished by the circuit court that admitting to the allegations therein would result in at least a six-year sentence of imprisonment unless he was readmitted into the drug court program, confessed to consuming alcohol in violation of his probation. At his sentencing hearing, on January 17, 2017, the State recommended that the defendant receive imprisonment sentences of three years each for 11-CF-340, 13-CF-92, and 15-CF-172, with the sentences to run concurrently with one another. The State also recommended eight years' imprisonment for case 15-CF-232 based upon the defendant's prior criminal history and the fact that he committed the act while out on bond for another felony. The State noted that the sentence had to be served consecutively to the defendant's other sentences because his criminal history rendered the offense a Class X felony under Illinois law.

¶ 24 The defendant argued that a number of mitigating factors should be considered, specifically the following: his criminal conduct neither caused, nor threatened, serious reasonable harm to another; he did not contemplate that his criminal conduct would cause or threaten physical harm to another; he compensated the victim of his criminal conduct by paying $200 in restitution; his character and attitude demonstrated he was unlikely to commit another crime; he would be likely to comply with a period of probation; his imprisonment would cause excessive hardship on his family; and his imprisonment

10

would endanger his life as a result of his chronic back pain and emphysema. The defendant argued that considering these mitigating factors the court should resentence him to probation and participation in the drug court program.

¶ 25    Ultimately, the circuit court found the following:

"[I]n aggravation that the defendant has a lengthy criminal history, including the four pending felony cases that we're here for today. Furthermore, that the defendant was out on felony bond when this 15-CF-232 felony was committed. That a sentence would be necessary to detour [*sic*] others, and that the defendant has had a long history of being unable to comply with the [c]ourt's orders. And that it would be unlikely the defendant would be able to comply given his repeated opportunities to succeed in probation and Problem Solving Court without much success.

The [c]ourt does find in mitigation no physical harm resulted or was contemplated by the defendant. The defendant has compensated the victim of his criminal conduct. That incarceration would be an excessive hardship on his dependents and the overall cost of incarceration to the people of the State of Illinois.

Court weighing all these factors together, I find that any sentence to probation or, in this case, drug court, would deprecate the seriousness of the crimes committed."

¶ 26    The circuit court then ordered that the defendant serve three-year sentences in DOC for cases 15-CF-172, 11-CF-340, 13-CF-92, to run concurrently with each other,

followed by a mandatory three-year period of supervised release with credit for time served in each of the cases. Then for case 15-CF-232, the circuit court sentenced the defendant to seven years' imprisonment to be served consecutively to the other sentences as required by statute, followed by mandatory three years' supervised release with credit for time served.

¶ 27 The circuit court went on to close its sentencing of the defendant by stating:

"Now, sir, I understand your statements and your desires and your progress that you did make. And there was some progress. But this is a—so many opportunities have been afforded to you with repeated opportunities at probation and including Problem Solving Court. This is an ongoing problem which mere sentences won't solve. But you'll need that additional time to continue to work on fixing this substance abuse problem, sir. Everything in your life has been—is affected by your substance abuse, and it will never get any better until that problem is fully addressed."

¶ 28 Following the sentencing hearing, the defendant filed a motion to reconsider. Arguments on that motion were heard by the circuit court on August 8, 2017. The circuit court denied the defendant's motion to reconsider and the defendant subsequently brought this appeal in a timely manner.

¶ 29                                    II. ANALYSIS

¶ 30 The defendant contends that the circuit court improperly considered his conduct while on probation rather than focusing on his underlying offenses when it sentenced him to more than the minimum prison term where multiple mitigating factors weighed in his

favor. In analyzing the defendant's claims, we review the circuit court's sentencing decision under an abuse of discretion standard. *People v. Varghese*, 391 Ill. App. 3d 866, 876 (2009). An abuse of discretion occurs "where the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210 (2000).

¶ 31    "When a defendant's probation is revoked, the trial court may sentence the defendant to any term that would have been appropriate for the underlying offense." *People v. Vilces*, 186 Ill. App. 3d 983, 986 (1989). While a defendant may not be sentenced for the conduct which violated his probation, it is still proper for a circuit court to consider said conduct in determining the defendant's "rehabilitative potential." *Id.* So, while the circuit court may consider the act or acts which led to the revocation of probation, it must not punish the defendant for those acts. *Id.* "In reviewing a sentence following revocation of probation, the appellate court must determine whether the trial court improperly 'commingled' the underlying offense and the defendant's subsequent acts." *Id.* "[A] sentence within the statutory range for the original offense will not be set aside on review *unless* the reviewing court is strongly persuaded that the sentence imposed after revocation of probation was *in fact* imposed as a penalty for the conduct which was the basis of revocation, and *not* for the original offense." (Emphases in original.) *People v. Young*, 138 Ill. App. 3d 130, 142 (1985). "In sentencing a defendant, a trial court must balance the retributive and rehabilitative purposes of the punishment taking into account both the seriousness of the offense and the objective of restoring the offender to useful citizenship." *People v. Cooper*, 283 Ill. App. 3d 86, 95 (1996).

13

¶ 32 In support of his claim, the defendant argues that the circuit court's brief comments and analysis focus largely on his substance abuse problem. The defendant specifically relies upon the following comments by the circuit court:

"This is an ongoing problem which mere sentences won't solve. But you'll need that additional time to continue to work on fixing this substance abuse problem, sir. Everything in your life has been—is affected by your substance abuse, and it will never get any better until that problem is fully addressed."

¶ 33 The defendant claims that this comment demonstrates that the sentences the circuit court rendered were based upon the defendant's "substance abuse problem" which "constituted the behavior while on probation." The defendant further argues that the nature of the underlying offenses warrants nothing more than minimum sentences and that this is further evidenced by the court finding in mitigation that he was not dangerous, incarceration caused excessive hardship on his dependents, he paid restitution for the burglary, and he showed some progress in treatment for his substance abuse.

¶ 34 We first turn to the defendants' argument that the original offenses do not warrant the sentences received. In 11-CF-340 and 13-CF-92, the defendant committed the illegal acts of driving on a suspended license and driving on a revoked license, both Class 4 felonies. In 15-CF-172, the defendant committed two counts of aggravated battery in a public place which are Class 3 felonies. Finally, in 15-CF-232 the defendant committed the Class X felony of burglary.

¶ 35    For a Class 4 felony, the sentence is "not less than one year and not more than 3 years." 730 ILCS 5/5-4.5-45(a) (West 2012). For a Class 3 felony, the sentence is "not less than 2 years and not more than 5 years." *Id.* § 5-4.5-40(a). For a Class X felony, the sentence is "not less than 6 years and not more than 30 years." *Id.* § 5-4.5-25(a). Further, the Class X felony was committed while the defendant was out on bond, carrying with it a mandatory consecutive sentence. *Id.* § 5-8-4(d)(9).

¶ 36    In regard to the first three cases, 11-CF-340, 13-CF-92, and 15-CF-172, the circuit court sentenced the defendant to three years' imprisonment in each case, with all three sentences to run concurrently. On case 15-CF-232, the circuit court rendered a sentence of seven years' imprisonment to be served consecutively as required by statute. When examining the cases, we find that the circuit court was well within its discretion in rendering these sentences.

¶ 37    First, in 11-CF-340 and 13-CF-92, the defendant was sentenced to the maximum of three years' imprisonment. This sentence is not unreasonable given the defendant's overall criminal history—which, as the circuit court noted, is quite lengthy—as well as his recent traffic history. While it appears that the defendant had few if any traffic infractions prior to the February 2011 DUI, following that DUI the defendant continued to drive without a driver's license, including the October 21, 2016, occasion which the defendant admitted to, but apparently was never charged.

¶ 38    Second, in 15-CF-172, the defendant was found to have physically grabbed two 15-year-old girls, stopped them from walking home, and indicated he wanted them to perform sexual acts with him. He did this while intoxicated and on probation. The

15

defendant argues that this act deserved the minimum sentence because the conduct was only "insulting or provoking contact; no one was injured at all." We reject the either callous or careless use of language in this argument. To state that "no one was injured at all" when two young minors were accosted and sexually propositioned by the defendant is simply not accurate. This is not a case of an individual insulting or attempting to fight another individual in a public place. Clearly, the two young girls were injured by the defendant's actions. Given the nature of emotional injuries, especially at a young age, we can never know to what extent those injuries will affect the victims' lives. Thus, given the nature of the offense in 15-CF-172, a sentence of one year above the minimum and two years below the maximum was not an abuse of discretion.

¶ 39    Third, in 15-CF-232, the defendant, while out on reduced bond, stole a lawn mower from a man's shed committing his sixth burglary and tenth theft-related offense. Thus, it is not an abuse of discretion for the circuit court to have sentenced him to one year above the minimum sentence. The sentences become even more reasonable when one considers that the circuit court ordered that the sentences of 11-CF-340, 13-CF-92, and 15-CF-172 all be served concurrently, which allowed the defendant to avoid a much longer period of incarceration. Additionally, the circuit court sentenced the defendant to only one year above the minimum on 15-CF-232, a total of 7 years even though the maximum was a total of 30 years. Therefore, overall, the defendant was sentenced to 10 years' imprisonment for all four crimes where, if given the maximums available to the circuit court, the defendant would have served a substantially longer term. When taken as a whole, the circuit court was lenient in sentencing the defendant.

¶ 40    The circuit court does reference the defendant's multiple opportunities at probation during his sentencing; however, it does not appear his probation violations improperly impacted the sentences rendered. In referencing the failed probation and drug court, the circuit court simply noted the fact that defendant was placed on probation and in drug court on multiple occasions and failed to successfully complete those opportunities which is why the defendant was before the court being sentenced on the original offenses. Additionally, the circuit court's reference to the defendant's substance abuse problem was relevant to sentencing in that it played a role in many of the crimes committed: the defendant's license was initially suspended for diving under the influence of alcohol, cannabis was discovered in his vehicle when he was arrested for driving on a revoked license, and the defendant was intoxicated when he committed the aggravated batteries on the two minor victims. Further, the defendant's failure to complete probation or drug court and his substance abuse problem speak directly to his "rehabilitative potential." As discussed above, while a defendant may not be sentenced for the conduct which violated his probation, it is still proper for a circuit court to consider that conduct in determining the defendant's "rehabilitative potential." *Vilces*, 186 Ill. App. 3d at 986.

¶ 41    The defendant also argues that the mitigating factors were either not considered or were improperly considered. To the extent the defendant is attempting to argue the sentencing factors were not considered, we find no merit to that argument. It is well documented in the record that the circuit court considered the sentencing factors as outlined in sections 5-5-3.1 and 5-5-3.2 of the Unified Code of Corrections (730 ILCS 5/5-5-3.1, 5-5-3.2 (West 2016)).

¶ 42   Regarding whether the circuit court properly weighed the mitigation factors, the defendant in his brief does not expressly discuss how the mitigating factors were improperly considered. Instead, the defendant simply states that the sentences were unreasonable given the nature of the crimes committed and that this is further evidenced by the fact that the circuit court found in mitigation that the defendant was not dangerous, imprisonment would cause excessive hardship on his dependents, he paid restitution for the burglary, and he showed some progress in treatment for his substance abuse. However, the defendant fails to mention that factors of aggravation were also found by the circuit court, including: that the defendant has a lengthy criminal history, the defendant was out on felony bond when the felony burglary was committed, that a sentence would be necessary to deter others, and that the defendant's "rehabilitative potential" was low given his long history of being unable to comply with the court's orders and his repeated failures to complete probation and drug court.

¶ 43   The circuit court summed up its analysis of the sentencing factors by stating, "*weighing all these factors* together, I find that any sentence to probation or, in this case, drug court, would deprecate the seriousness of the crimes committed." (Emphasis added). Given the discretionary nature of sentencing and that the circuit court is in a superior position to observe and analyze a defendant's credibility, demeanor, general moral character, mentality, social environment, and habits, we see no obvious error that would suggest the court improperly weighed the factors. Moreover, as explained above, "a sentence within the statutory range for the original offense will not be set aside on review *unless* the reviewing court is strongly persuaded that the sentence imposed after

revocation of probation was *in fact* imposed as a penalty for the conduct which was the basis of revocation, and *not* for the original offense." (Emphases in original.) *Young*, 138 Ill. App. 3d at 142 (1985). We are not strongly persuaded that such is the case here, and we therefore decline to second-guess the circuit court's handling of the sentencing in this case.

¶ 44                                    III. CONCLUSION

¶ 45    For the foregoing reasons, we find that the circuit court's sentencing of the defendant was not an abuse of discretion, that the sentences were not based on the defendant's actions during probation, and that the sentencing factors were properly weighed.


¶ 46    Affirmed.